# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

In re:

Lynne R. Gaylor,

        Debtor.
_____/

Chapter 13
Case No. 22-31228-jda
Hon. Joel D. Applebaum

## OPINION DENYING CONFIRMATION OF DEBTOR'S PLAN AND DISMISSING CHAPTER 13 CASE

The issue before the Court is whether Debtor's case and proposed chapter 13 plan were filed in good faith despite having fraudulently obtained a paycheck protection program ("PPP") loan by misrepresenting the existence of a business and having failed to disclose that PPP loan or its forgiveness on her petition, schedules and statement of financial affairs ("SOFA"), as repeatedly amended. Applying the totality of the circumstances test, the Court finds that Debtor did not file this case in good faith and that her pre- and post-petition conduct evidences an abuse of the bankruptcy process. Accordingly, this case will be dismissed. Moreover, because the Court finds a lack of good faith and an abuse of the bankruptcy process, the Court will also impose a two-year bar on refiling. *See Riddle v. Greenberg (In re Riddle)*, 2020 WL 3498438 (B.A.P. 6th Cir. 2020); *In re Terrionna Davis*, Case No. 22-31147.

## JURISDICTION

This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(L) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(a) and the statutory and constitutional authority to enter a final order. *Stern v. Marshall*, 564 U.S. 462 (2011).

## STATEMENT OF FACTS

A. Debtor's Chapter 7 Case

On August 17, 2022, debtor, Lynne R. Gaylor, filed a voluntary individual chapter 7 bankruptcy petition. On the bankruptcy petition, Debtor indicated that she had not used any business name or d/b/a in the past 8 years, nor did she have an employer identification number ("EIN") (questions 2 and 4). She also indicated that she was not the sole proprietor of any business, part time or full time (question 12). On Schedule A/B, line 19, Debtor indicated that she had no interest in "non-publicly traded stock and interests in incorporated and unincorporated businesses."

Debtor's Schedule D listed one secured debt, a loan on Debtor's vehicle in the amount of $30,004. Schedule E/F listed no priority debts and $35,610 in unsecured debts, with $19,786 in student loans and the remaining $15,823 primarily for credit card debt. No debt was listed for a PPP loan.[1]

---

[1] Presumably, no debt was listed because the loan had been forgiven pre-petition.

Debtor's Schedules I and J stated that Debtor works as a welcome coordinator for Oak Street Health with monthly income of $3,563.28 and monthly expenses of $3,563 leaving net income of $0.56.

Debtor's Statement of Financial Affairs ("SOFA") indicated the following: Under Part 2 ("Explain the Sources of Your Income), Debtor earned $41,638 in 2021 and $21,086 in 2020 from "wages, commissions, bonuses, tips." (Part 2, question 4), and Debtor received -$5,130 in 2021 and $12,330 in 2020 from other income but did not specify the source of that income (or losses in 2021) (Part 2, question 5). Debtor did not identify the receipt of funds (whether as loans or forgiveness income) from her PPP loan on her SOFA. In response to Question 27 on her SOFA, Debtor did not disclose any business entities.

### B. The United States Trustee's Complaint

On October 28, 2022, the United States Trustee ("UST") filed an adversary proceeding (AP Case No. 22-3038) asserting Debtor should be denied a discharge under 11 U.S.C. § 727 (c), (d) and (e). According to the UST's Complaint, Debtor obtained $19,342 through a PPP Loan for a non-existent fitness and recreation center, and she was "either not entitled to the loan because the business did not exist at that time, or if she was entitled to the loan, is concealing the company in her bankruptcy filings." (AP Complaint, Dkt. 1). Further, the UST's Complaint asserted that "[i]n this bankruptcy, the Debtor did not disclose the income she received from

- 3 -

22-31228-jda    Doc 92    Filed 12/01/23    Entered 12/01/23 11:44:31    Page 3 of 17

the PPP loan, or the business she claimed to have when she took out the loan. She also concealed records about this transaction by not disclosing them at her [section] 341 meeting of creditors and failed to explain the dissipation of the PPP funds. Her discharge should therefore be denied as a result." (*Id.*)

On December 5, 2022, Debtor and the UST entered into a stipulated settlement of the Adversary Proceeding (AP Dkt. 4). The stipulation indicated that Debtor wanted "to resolve the matter without the need for further inquiry or litigation, and without making any admissions" and "has chosen to waive her entitlement to a Chapter 7 discharge for any and all debts she incurred as of and prior to August 5, 2022." (AP Dkt. 4, ¶ 3). In exchange for Debtor's chapter 7 discharge waiver, the UST agreed it would "not contest the Debtor's right to convert this case to Chapter 13, and will neither contest the Debtor's right to receive a discharge in Chapter 13 based upon the conduct alleged in the [UST's] Complaint . . . or demand a specific repayment percentage in Chapter 13." (*Id.* at ¶ 9).

On December 6, 2022, Debtor filed a motion to convert this case from chapter 7 to chapter 13. On January 18, 2023, this Court entered an Order Denying Discharge of Debtor under 11 U.S.C. § 727 (a)(10).[2]

---

[2] Section 727(a)(10) provides that "[t]he court shall grant the debtor a discharge, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter."

On January 18, 2023, after a hearing on the Motion to Convert, the Court converted the case (Dkt. 27).³ The Court indicated, however, that it made no findings regarding Debtor's good faith, and that no party in interest was precluded from challenging Debtor's good faith because of the conversion order.

C. Debtor's Chapter 13 Case

On January 30, 2023, Debtor filed amended schedules and a proposed chapter 13 Plan. Debtor's amended schedules I and J (Dkt. 36) show income of $4,198.04, expenses of $4,032.56, leaving net monthly income of $165.48. The amended schedules I and J adjusted Debtor's income up by $600 and her expenses up by the same amount. Debtor's plan (Dkt. 32) proposes 36 monthly payments of $165 per month and does not address any specific debts. The plan proposes a 0% distribution to unsecured creditors.

On March 13, 2023, the Trustee filed Objections to Confirmation (Dkt. 42) which included objections based on the undisclosed PPP loan (objections 6-10), among other issues.

On March 31, 2023, Debtor filed an amended petition (Dkt. 45). The amended petition again stated that Debtor had not used an assumed name or d/b/a in the past 8 years, nor did she have an EIN (questions 2 and 4). The SOFA

---

³ The Chapter 13 Trustee did not receive notice of Debtor's Motion to Convert until after the Court's conversion order was entered.

attached to the amended petition disclosed two cleaning businesses (question 27) but does not list the fitness and recreation center business, the PPP loan or the proceeds received. (questions 4 and 5).

On March 31, 2023, Debtor filed her First Amended Proposed Plan. The only substantive change addressed the amount of attorneys' fees.

On April 3, 2023, Debtor filed amended schedules I and J (Dkt. 49), showing income of $3,398.74, expenses of $3,233.56, and net income of $165.18. Both income and expenses decreased by about $800 from the amended schedules filed in January 2023.

On May 3, 2023, Debtor filed an amended SOFA (Dkt. 52). The amended SOFA lists two cleaning businesses (question 27) but does not list the fitness and recreation center business, the PPP loan or the proceeds received. (questions 4 and 5).

On May 9, 2023, Debtor filed yet another amended SOFA (Dkt. 53). In this version, in response to question 5, Debtor finally disclosed her PPP loan.

On July 7, 2023, the Trustee filed a brief in support of his objections to confirmation.

On July 28, 2023, Debtor filed a response to the Trustee's objection.

On August 11, 2023, the Trustee filed a reply brief.[4]

On October 4, 2023, the Court held an in-person hearing on the Chapter 13 Trustee's good faith objections and took this matter under advisement.

## ANALYSIS

Section 1325 of the Bankruptcy Code provides, in pertinent part,

Except as provided in subsection (b), the court shall confirm a plan if –

(a)(3) the plan has been proposed in good faith and not by any means forbidden by law . . ..

(a)(7) the action of the debtor in filing the petition was in good faith . . ..

As explained by the Sixth Circuit,

> a good faith determination under § 1325(a)(3) requires an inquiry into all the facts and circumstances of a debtor's proposed plan . . .. [a] debtor's pre-petition conduct is but one element in the debtor's total circumstances; the good faith calculus requires the use of discretion by the bankruptcy judge . . .. Good faith is an amorphous notion, largely defined by factual inquiry. In a good faith analysis, the infinite variety of factors facing any particular debtor must be weighed carefully. We cannot here promulgate any precise formulae or measurements to be deployed in a mechanical good faith equation. The bankruptcy court must ultimately determine whether the debtor's plan, given his or her individual circumstances, satisfies the purposes undergirding Chapter 13: a sincerely-intended repayment of pre-petition debt consistent with the debtor's available resources. The decision should be left simply to the bankruptcy court's common sense and judgment.

---

[4] On October 1, 2023, Melissa Caouette was appointed successor Chapter 13 Trustee to replace Carl Bekofske, who retired effective September 20, 2023.

*Hardin v. Caldwell (In re Caldwell)*, 851 F.2d 852, 858-859 (6th Cir. 1988) (internal citation omitted)

Although there are no precise formulae or measurements, the *Caldwell* court, relying on the Seventh Circuit's decision in *United States v. Estus (In re Estus)*, 695 F.2d. 311 (7th Cir. 1982), nevertheless identified several factors that a bankruptcy court may find meaningful in determining good faith with respect to a debtor's plan. These factors include, but are not limited to:

> (1) the amount of the proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn and likelihood of future increases in income; (3) the probable or expected duration of the plan; (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court; (5) the extent of preferential treatment between classes of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7; (8) the existence of special circumstances such as inordinate medical expenses; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and (11) the burden which the plan's administration would place upon the trustee.

*Id.* at 317.

To supplement the *Estus* factors, the *Caldwell* court also identified the following considerations:

> (1) whether the debtor is attempting to abuse the spirit of the Bankruptcy Code; (2) good faith does not necessarily require substantial repayment of the unsecured claims; (3) the fact a debt is nondischargeable under Chapter 7 does not make it nondischargeable under Chapter 13; and (4) the fact that a debtor

> seeks to discharge an otherwise nondischargeable debt is not, *per se,* evidence of bad faith, but may be considered as part of the totality of the circumstances analysis.

*Caldwell*, 851 F.2d at 859. The *Caldwell* court emphasized, however, that no list is exhaustive of all the conceivable factors which could be relevant when analyzing a particular debtor's good faith. Moreover, no one factor should be viewed as being a dispositive indication of the debtor's good faith. "'The totality of the circumstances' test means what it says: It exacts an examination of all the facts in order to determine the bona fides of the debtor.'" *Id*. at 860 (internal citation omitted).

Determining whether a debtor filed his or her *petition* in good faith also requires consideration of the totality of the circumstances, applying the same factors identified in the plan confirmation context. *Alt v. United States (In re Alt)*, 305 F.3d 413, 419, 420 (6th Cir. 2002) ("the 'same policy' of protecting against an abuse of the provisions and spirit of Chapter 13 'embodies the two good faith evaluations.'") (internal citation omitted). "However, given the more severe consequences [of dismissal], the law also recognizes that the 'bankruptcy court should be more reluctant to dismiss a petition under Section 1307(c) for lack of good faith than to reject a plan for lack of good faith under Section 1325(a).'" *Id*. at 420. (internal citation omitted). Because the Chapter 13 Trustee also challenges Debtor's good faith in filing her petition under §§ 1325(a)(7) and 1307, and requests dismissal of

the petition with a one-year bar to refiling, the *Alt* court's admonition is applicable here.

In this case, the Chapter 13 Trustee asserts, and the Court agrees, Debtor lacked good faith in filing this case as demonstrated by Debtor's pre-petition conduct in fraudulently obtaining the PPP loan. But Debtor's lack of good faith is demonstrated by more than just her fraudulent pre-petition conduct. Here, Debtor also failed to disclose that loan or its forgiveness on her chapter 7 and chapter 13 petitions, failed to disclose that loan or its forgiveness in her original chapter 7 schedules and SOFA, or in her chapter 13 schedules and SOFA, as repeatedly amended, and failed to disclose that loan or its forgiveness during her chapter 7 section 341 meeting of creditors or at her subsequent chapter 13 section 341 meeting of creditors. Notwithstanding the fact that (a) the UST's complaint objecting to discharge in the Chapter 7 case laid out the facts of Debtor's fraudulently obtained PPP loan in considerable detail and Debtor stipulated to waiver of her chapter 7 discharge and conversion of this case to chapter 13 because of this very issue and (b) the Chapter 13 Trustee objected to Debtor's plan calling out the PPP loan issue specifically, Debtor still needed to amend her schedules and/or SOFA *four times* before finally disclosing the existence of the fraudulently obtained PPP loan proceeds. Debtor also repeatedly failed to disclose her cleaning business allegedly operating since early 2021.

Because the Court finds that Debtor did not file this case in good faith under §§ 1307(c) and 1325(a)(7), it is unnecessary to determine whether Debtor proposed her plan in good faith under § 1325(a)(3).

In response, Debtor argues that her pre-petition conduct had no bearing on her decision to file bankruptcy and, therefore, her non-bankruptcy conduct should not be considered in determining whether she filed her petition in good faith or whether she proposed her plan in good faith. According to Debtor, she filed bankruptcy to address unsecured debt she was having difficulty managing on her current income. The PPP loan proceeds, albeit fraudulently obtained, were received and dissipated seventeen months prior to her bankruptcy filing. The loan was thereafter forgiven and neither Capital Plus Financial, LLC, as lender, nor the Small Business Administration, as guarantor, have asserted any claims in this case. Because the PPP loan is unrelated to this case, it cannot be argued that, by filing Chapter 7 and then converting to Chapter 13, Debtor is seeking to abuse the bankruptcy process. Rather, relying on *In re Heath*, 649 B.R. 313 (Bankr. N.D. Ill. 2023), Debtor argues that the Court's good faith inquiry should focus on Debtor's plan, not on whether the petition was filed in good faith and, moreover, "the Trustee is, in effect, seeking an adjudication in this court about the propriety of the PPP loan when the loan is not related to this bankruptcy case. The Trustee has failed to show how the circumstances of the PPP loan have any relevance to the confirmation of the Debtor's

plan." *Id.* at 317-318. Debtor also argues that amending schedules and SOFA to correct errors or omissions is not unusual and does not reflect a lack of good faith here, where the circumstances surrounding Debtor's PPP loan occurred 17 months prior to filing chapter 7. Debtor also argues that she operated a cleaning business "since or before 2020," although it is not clear the relevance of this business to the PPP loan fraudulently obtained in connection with a non-existent fitness and recreational center. (Dkt. 69, p. 2).

Debtor's reliance on *In re Heath* is misplaced for several reasons. First, the *Heath* case addressed good faith in the filing the plan under § 1325(a)(3). In this case, the Chapter 13 Trustee based her objection on §§ 1325(a)(3) and (a)(7), and § 1307(c), which necessarily includes an inquiry into a debtor's good faith in filing the petition. *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 373-375 (2007). Therefore, this Court's inquiry is not limited solely to whether Debtor's plan was filed in good faith, and the Court can consider Debtor's lack of good faith in filing her case.

Moreover, in *Heath*, the court found that the debtor was, in fact, a business owner and that she used the PPP loan proceeds to buy supplies and pay back rent in connection with that business. Unlike the debtor in *Heath*, Debtor in this case had no fitness and recreational center business and, therefore, she had no basis for accepting the PPP loan in the first place. Although Debtor belatedly claimed to have

operated a cleaning business, the PPP loan was obtained based upon the fraudulent misrepresentation that Debtor operated fitness and recreational sports centers, not a cleaning business. Moreover, Debtor's cleaning business was not disclosed on Debtor's amended SOFA until March 31, 2023 (Dkt. 45), after this case was converted to chapter 13, and was never disclosed in the chapter 7.

Nor can the Court accept Debtor's unsupportable assertion that there is no relationship between the fraudulently obtained PPP loan and Debtor's bankruptcy filing and/or Debtor's chapter 13 plan, and therefore, the case and the plan cannot be said to be lacking in good faith. Even if the Court assumes Debtor filed her chapter 7 bankruptcy petition to address claims unrelated to her fraudulently-obtained PPP loan, she repeatedly failed to comply with the Code's disclosure requirements. The PPP loan and her many disclosure failures became the entire focus of her chapter 7 case after the UST filed its complaint objecting to Debtor's discharge. In that complaint, the UST alleged not merely that Debtor fraudulently obtained her PPP loan by misrepresenting that she operated a fitness and recreational center and by making further misrepresentations to obtain her loan forgiveness, but that she concealed the loan and misrepresented her income, among other failings, on her initial petition, on her chapter 7 schedules and SOFA, and during her section 341 meeting of creditors. (*See Complaint*, AP Case No. 22-3036, Dkt. No. 1, ¶¶ 14-19). To date, Debtor has yet to explain how the loan proceeds were dissipated. (*Id.*, ¶ 20-

21.) In the Stipulation for Entry of Order Waiving Debtor's Discharge Under 11 U.S.C. § 727(a)(10), Debtor acknowledged that she was waiving her chapter 7 discharge so that the complaint could be resolved "*without the need for further inquiry* or litigation, and without making any admissions" (AP Case No. 22-3036, Dkt. No. 8, ¶ 3, emphasis added), thereby enabling her to continue her pattern of non-disclosure. Moreover, even Debtor's alleged cleaning business was not disclosed on her SOFA filed while this case was in chapter 7 or during her chapter 7 section 341 meeting of creditors.

Even after this case converted to chapter 13, Debtor needed to amend her chapter 13 schedules and SOFA four times before finally disclosing the PPP loan or receipt of the PPP loan proceeds. While amending schedules and SOFA, even multiple times, may not be unusual, here Debtor had the benefit of the detailed roadmap provided by the UST's complaint prior to conversion. This complaint laid out all of the facts necessary to immediately prepare accurate schedules and SOFA in the chapter 13 case disclosing the PPP loan or the receipt of the PPP loan proceeds. Debtor cannot seriously claim that she was unaware of the PPP loan or its importance to this case as this loan was the *sole* reason the Debtor converted her case to chapter 13 in the first instance. And very shortly after conversion, the Chapter 13 Trustee specifically raised this issue in her objection to plan confirmation. Moreover, as explained above, even after multiple amendments, Debtor's disclosures still

remained incomplete.  The Court cannot ignore Debtor's repeated failures to disclose critical information that she knew, or should have known, she was legally obligated to disclose despite having had innumerable opportunities to do so.  Debtor's pre-petition conduct, coupled with her repeated and knowing failures to make the required post-petition disclosures, evidence an abuse of the bankruptcy Debtor's lack of good faith in filing this case.

Debtor also argues that dismissal is unwarranted because Capital Plus Financial, LLC and the Small Business Administration have not asserted claims against the Debtor in this case and, therefore, the Chapter 13 Trustee is inappropriately attempting to "assert claims on behalf of [a party] who [does] not claim that the Debtor owes [it] money." *Debtor's Brief*, Dkt. No. 69, p.10, quoting *In re Heath*, 649 B.R. at 318.  It is not surprising that Capital Plus Financial, LLC or the SBA did not file claims in this case and their failure to do so does not support Debtor's arguments.  Neither entity was served with the Notice of Commencement of this bankruptcy case because Debtor did not list them on her schedules or on the matrix of creditors used for serving the Notice of Commencement.  Moreover, even had Capital Plus Financial, LLC and/or the SBA been served with the Notice of Commencement, their internal records would not reflect a claim since Debtor fraudulently obtained forgiveness of the PPP loan before she filed her bankruptcy petition.  The failure to provide notice to the victims of a fraudulently obtained and

fraudulently forgiven PPP loan is hardly a basis to find that this case was filed in good faith.[5]

The Court also notes that Debtor's plan as amended provides no distribution to unsecured creditors. As the Sixth Circuit cautioned, "[C]ourts should not approve Chapter 13 plans which are nothing more than 'veiled' Chapter 7 plans . . . . A Chapter 13 plan which proposes to repay only a small portion of a debt which could not be discharged under Chapter 7 deserves 'particular scrutiny.'" *In re Caldwell*, 895 F.2d 1123, 1126 (6th Cir. 1990) (internal citations omitted). Here, all of the claims of unsecured creditors are non-dischargeable in chapter 7 by virtue of Debtor's chapter 7 discharge waiver, and Debtor's plan offers no hope of meaningful recovery. During oral argument, Debtor's counsel indicated that the plan could be amended to enhance unsecured creditors' recovery. Given Debtor's schedules I and J, as amended, the Court is not sanguine that Debtor is financially capable of making a meaningful distribution to unsecured creditors in this case.

---

[5] On October 10, 2023, Debtor filed amended schedule E/F, listing the SBA as an unsecured creditor with the type of non-priority unsecured claim identified as "other." She also identified the SBA and the US Attorney General as others to be notified about the SBA claim, with no further information. Capital Plus Financial LLC was not listed in the amended schedules. (Dkt. 80) The Court has concerns about providing bare notice without any additional explanation. Specifically, without explanation, the Court does not believe the SBA will have any idea why it has been listed as a possible creditor in this case, particularly in light of the loan forgiveness. Similarly, without any explanation, the Office of the US Attorney General will not understand why it is getting notice of this case.

Because the Court finds that Debtor's petition was not filed in good faith, and that her pre- and post-petition conduct constitutes an abuse of the bankruptcy process, the Court will enter an order denying confirmation of Debtor's plan and dismissing this chapter 13 case. Moreover, in light of the Court's findings of bad faith and an abuse of the bankruptcy process, the order of dismissal will contain a two-year bar to refiling.

**Signed on December 1, 2023**



/s/ Joel D. Applebaum
**Joel D. Applebaum**
**United States Bankruptcy Judge**